**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KIMBERLY STRINGFIELD ROBINSON**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 05-0363**

**LAFAYETTE STEEL ERECTOR, INC.**                   **SECTION "K"(5)**

**ORDER AND OPINION**

Before the Court is the "Renewed Motion for Summary Judgment" filed on behalf of defendant Lafayette Steel Erector, Inc. ("Lafayette Steel") (Doc. 63). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion for summary judgment.

BACKGROUND

In February 2003, Lafayette Steel used Labor Finders, a temporary staffing service, to attempt to fill a truck driver position on a project at the New Orleans Airport; the truck driving position was to last for the duration of the airport project. Kimberly Robinson filed an employment application with Labor Finders. James F. Defrees, Office Manager for Labor Finders, sent Ms. Robinson to Lafayette Steel to be interviewed by Johnny Fields, a Lafayette Steel employee. Lafayette Steel did not hire Ms. Robinson.

Labor Finders then sent Gregory Blake, an African American male, to be interviewed by Lafayette Steel; Mr. Blake received the job. He worked one day on the airport job but was fired a day later after apparently "locking up" the steering assembly mechanism on the truck he had operated the day before.

Kimberly Robinson filed a complaint against Lafayette Steel with the Equal Employment

Opportunity Commission ("EEOC") contending that she had been discriminated against on the basis of her sex.  The EEOC issued a determination letter finding that Lafayette Steel "is an employer within the meaning of Title VII of the Civil Rights Act of 1964. . ." and that "there is reason to believe that violations of Title VII have occurred."  (Doc. 70-2).

Ms. Robinson filed suit against Lafayette Steel pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("the Act")  alleging that Lafayette Steel discriminated against her on the basis of her sex.  Lafayette Steel  moved for summary judgment asserting that it was not an employer subject to liability under Title VII.  Applying the hybrid analysis set out in *Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985), the Court granted  the motion for summary judgment stating "[a]s the Court has not been provided by plaintiff with any facts or evidence to demonstrate why Lafayette Steel should be considered an employer because it selected and would have employed, controlled, trained, or paid Lafayette Steel, the employer at issue, the Court must grant this motion."[1] (Doc. 45).  The Court noted:

> There may be information which would create a question of material [fact] as to the Lafayette Steel's right to control the "means and manner" of the worker's performance.  However, it is not the province of the Court to fill this vacuum.  In the event, the Court is presented with deposition or affidavit testimony that would create a genuine issue of material fact in a properly filed Motion for New Trial under Fed. R. Civ. P. 59, it will consider same under that rubric.

(Doc. 45).

Thereafter plaintiff's counsel filed a motion for new trial, attaching an  affidavit by Ms. Robinson stating in pertinent part that:

---

[1] The opinion noted that plaintiff's opposition "rested solely on the fact that the [EEOC] Determination Letter noted  . . . that Lafayette Steel is an employer."  (Doc. 45).

> had she been hired for the truck-driving position she would have been
> under the active control and supervision of Lafayette Steel Erector,
> Inc. and would have received her daily orders and instructions from
> Lafayette Steel Erector, Inc., who would have had the power to fire
> her or to hire her for a permanent truck-driving position.

(Doc. 47-3, Exhibit 1).  In support of her motion, plaintiff also submitted the "Position Statement

of Labor Finders" previously submitted by Labor Finders to the EEOC, which states that "[o]nce

hired, the worker is completely under the supervision and control of the hiring employer but is paid

by Labor Finders with funds provided the employer."  (Doc. 47-3, Exhibit 2).  The Court granted

the motion for new trial.        Relying on an  affidavit by Bruce Leininger, its Human Resources

Director, Lafayette Steel now  renews  its motion for summary judgment.  Mr. Leininger's affidavit

states in pertinent part that:

- Lafayette Steel agreed to pay Labor Finders an hourly rate for the services provided, and Labor Finders was responsible for paying its employee for services provided;
- Had Ms. Robinson performed services for Lafayette Steel at the airport jobsite, she would have never received a paycheck or any monetary compensation of any sort from Lafayette Steel;
- Labor Finders was free to pay its employees (including Ms. Robinson) whatever they desired;
- Ms. Robinson did not submit a job application with Lafayette Steel; Lafayette Steel received Ms. Robinson's application through Labor Finders;
- Ms. Robinson did not receive any tax documents from Lafayette Steel, nor did any contract employee for Lafayette Steel;
- Lafayette Steel would not have provided training to Ms. Robinson;
- Lafayette Steel had no authority to dictate or even suggest to Labor Finders who they could or could not hire or fire.  At best, Lafayette Steele could request removal of a worker from their jobsite at which time Labor Finders would have been free to place the worker elsewhere;
- Labor Finders had no authority to, and would not involve itself in, discipline of a contract worker such as Ms. Robinson;
- Lafayette Steel would not have provided benefits to Ms. Robinson; such benefits, if any, would have come from Labor Finders;
- Lafayette Steel would not have prevented Ms. Robinson, or any similarly situated contract worker, from performing services at other facilities through

Labor Finders; and

- "While Lafayette Steel, out of necessity would direct all workers on the jobsite as to what needed accomplishing and by when, the company expected to so inform the truck driver retained and he/she would accomplish the task accordingly. The person it sought to retain through Labor Finders was to load, unload, and drive a truck in confined spaces on the construction site at the New Orleans airport. We expected the individual to come trained, with experience and without the need for step by step instructions as to "how to" perform the work required. This is one reason that Greg Blake was preferred over Ms. Robinson - he had specific experience rigging and operating a semi in confined spaces, a requirement on the airport project. Lafayette Steel would not and did not control the means or methods by which Mr. Blake (or Ms. Robinson had she worked on the project) performed the work."

Doc. 63-5, Exhibit B.

## LAW AND ANALYSIS

In determining whether a plaintiff is an employee for Title VII purposes the hybrid test advanced in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979), and adopted by the Fifth Circuit in *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985), applies. *See also Diggs v. Garris Hospital – Methodist, Inc.*, 874 F.2d 270, 272 (5th Cir. 1988). The hybrid test "considers the 'economic realities' of the work relationship as an important factor in the calculus, but . . . focuses more on 'the extent of the employer's right to control the means and manner of the worker's performance.'" In *Spirides*, the D.C. Circuit recognized that the "extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review . . . If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist" *Id.* at 831-32.

In determining the right to control the "means and manner" of the worker's performance, the following factors are relevant: 1) ownership of equipment necessary to its performance; 2)

4

responsibility for costs associated with operating that equipment as well as license fees and taxes; 3) responsibility for obtaining insurance; 4) responsibility for maintenance and operating supplies; 5) ability to influence profits, 6) length of job commitment, 7) form of payment; and 8) direction on schedules and performing work. *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986). Lafayette Steel has not offered any evidence establishing that it did not own the equipment necessary for the performance of the truck driver's job, that it was not responsible for the costs associated with operating the equipment necessary for the truck driver's job, or that it was not responsible for maintenance and operating supplies.

As a truck driver, plaintiff's performance would have had, at most, a negligible effect on Lafayette's profits. Bruce Leininger's affidavit establishes that the work sought by Ms. Robinson was "temporary in nature" and that the "project itself was to be limited in time." However, plaintiff's affidavit[2] states that Lafayette Steel had the "power" to "hire her for a permanent truck-driving position." Because plaintiff's statement focuses on defendant's authority to hire her, as opposed to the nature of the particular truck driving position for which she interviewed, Ms. Robinson's statement is not inconsistent with defendant's position that plaintiff would not have been hired for the airport job and that the airport job was temporary.

It is undisputed that if plaintiff had received the job with Lafayette Steel that she would have been paid by Labor Finders, and that Labor Finders "establish[ed] the wages and fringe benefits, if any, of its employees and assumes responsibility for the payment of such compensation, the withholding and payment of all required payroll taxes, and the maintenance of Workmen's

---

[2] Plaintiff submitted her affidavit in support of her motion for new trial. (Doc. 47-3, Exhibit 1).

Compensation Insurance as required by state law." Doc. 63-5, Exhibit C (Labor Finders Invoice to Lafayette Steele ), Doc. 63-5, Exhibit B ( Affidavit of Bruce Leininger). Plaintiff's affidavit concedes  that Labor Finders would have paid her - although she states that she would have been paid with "funds received from Labor Finder's customer Lafayette Steel Erector, Inc. . . ." Doc. 47-3, Exhibit No. 1.  It is also undisputed that Labor Finders contracted with Lafayette Steel to be paid a specified amount per hour for the work performed by a worker sent to Lafayette Steel by Labor Finders and that Labor Finders had sole control over how much the worker was paid.

The final factor in the "right to control" analysis  is whether the party sought to be determined to be an "employer" under the  Act has the authority to direct the worker's schedule and the manner in which the worker performs the job.  Mr. Leininger's  affidavit falls short of establishing that Lafayette Steel lacked the authority to direct the  manner in which  plaintiff would have performed the work assigned to her.

Plaintiff's affidavit states that "she would have been under the active control and supervision of Lafayette Steel Erector, Inc. and would have received her daily orders and instructions from Lafayette Steel Erector, Inc."  While it may be difficult to believe that plaintiff's affidavit is based on personal knowledge, given that  she never worked for Lafayette Steel, it is not inconceivable that she received that information during her interview with Mr. Fields, a Lafayette Steel employee. Moreover, plaintiff's statement is consistent with the Credit Form that Labor Finders provided  to its clients which states that  "[t]erms and conditions of temporary labor usage are detailed on the back of each LABOR FINDERS work order.  CUSTOMER is responsible for supervision of LABOR FINDERS employees."  Doc. 63-6, Exhibit I.  Additionally, Bruce Leininger's affidavit states that Lafayette Steel had authority "to direct all workers on the jobsite as to what needed

accomplishing and by when . . ." Although Leininger's affidavit states that "Lafayette Steele would not and did not control the means or methods by which Mr. Blake (or Ms. Robinson had she worked on the project) performed the work" that statement does not negate Lafayette Steel's right to direct the means or methods of the worker. Implicit in Lafayette Steel's stated authority "to direct all workers on the jobsite as to what needed accomplishing and by when" is authority to control the "means and manner" of Robinson's performance, had she been hired. To put it another way, Mr. Leininger's affidavit does not establish that Lafayette Steele <u>could not</u> control how the truck driver's work was performed; only that it "would not and did not control the means or methods by which Mr. Blake (or Ms. Robinson had she worked on the project) performed the work." While Mr. Leininger's affidavit places control for the actual method of loading, unloading and driving the truck with the truck driver, considering the affidavit as a whole, it is clear that Lafayette had the authority to control what was loaded where, when the truck was loaded, when the truck was to be unloaded, and where the load would be unloaded. It is also clear that Lafayette Steel had the authority to coordinate the truck driver's efforts with those of the other workers at the site.

Considering together the entirety of Mr. Leininger's affidavit, Ms. Robinson's affidavit, and Labor Finders "Credit Form," there is a genuine issue as to whether Lafayette Steel would have had the authority to direct the manner in which Ms. Robinson would have performed the job of truck driver. That issue coupled with the lack of evidence concerning who owned the equipment necessary to perform the truck driver's job, who was responsible for the costs associated with operating that equipment as well as license fees and taxes, and who was responsible for maintenance and operating supplies creates a genuine issue of material fact concerning whether Lafayette Steel had the right to control the means and manner of Ms. Robinson's work performance had she been

7

hired.

Although the right to control the means and manner of a worker's performance is not the only factor to be considered in analyzing whether an  entity  is an employer for purposes of a Title VII discrimination claim,[3] it is well established that it is "the most important factor to review." *Spirades v. Reinhardt*, 613 F.2d at 831.  Because there is a genuine issue of material fact concerning whether Lafayette Steel had the right to control the means and manner of Ms. Robinson's work performance had she been hired, the Court cannot grant the renewed motion for summary judgment. Accordingly, Lafayette Steel's "Renewed Motion for Summary Judgment" is DENIED.

New Orleans, Louisiana, this 15th day of November, 2007.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] The following facts are also relevant in determining whether a person or entity is an employer for Title VII purposes:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in a particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Mares v. Marsh*, 777 S.2d at 832.